S. R. FOWLE & SON v. D. C. WARREN.

(Filed 29 September, 1915.)

Deeds and Conveyances—Tax Deeds—Color of Title—Disseizin—Adverse Possession—Declarations—Evidence.

Where the grantee under a sheriff's deed for taxes relies upon his deed as color of title, and it appears that he has lived on the lands with the original owner, since deceased, cultivating them, within the seven years period, evidence tending to show declarations of the original owner, made since the tax deed, to the effect that the lands belonged to the grantee therein, who was permitting him to remain there until his death, and that he could not sell the timber growing thereon for that reason, is sufficient to show disseizin of the original owner of the tax title, presenting a question for the determination of the jury; and in this case it is held that the testimony of the declarations of the original owner was sufficient evidence of acknowledgment of the tax title from the date of the tax deed.

APPEAL by defendant from *Justice, J.,* at the February Term, 1915, of BEAUFORT.

Action to remove a cloud from title. In 1898 Isaiah Rowe was the owner in fee of the land in controversy. On 1 May, 1898, the land was sold for taxes and on 3 March, 1899, the sheriff executed a deed therefor to the defendant Warren. Warren failed to make the affidavit and to give the notice required by sections 64 and 65, chapter 169,

Laws of 1897. Warren was the nephew of Rowe, and Rowe continued to live on the land until a short time before his death in July, 1901, and this action was commenced in January, 1907.

The defendant relied upon the tax deed as a valid conveyance of the land; and, if not valid, contended that it was color of title, and that he had held adversely under it for more than seven years.

The plaintiff claims the land under conveyances from the heirs of Rowe.

The defendant offered evidence tending to prove that he entered into possession of the land as soon as he got the tax deed; that he commenced farming on it, cutting rail timber, and cultivating it and using it like any other property.

At the conclusion of the evidence his Honor instructed the jury if they believed the evidence to answer the first issue, as to the ownership of the land, in favor of the plaintiff, and the defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*Ward & Grimes for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. It was held, upon the former appeal in this action (166 N. C., 446), that the tax deed under which the defendant claims was color of title, and it was said in the opinion: "The tax title being merely color of title, for the reason above given the burden was on Warren to show that he acquired the adverse possession prior to the death of Isaiah Rowe. It is true, he testified that he 'entered into possession of the land,' but his evidence is that Isaiah Rowe was then living on the land, as he had been for many years previous, and that he continued there until a very few days of his death. Warren did not show any act or assertion of adverse possession to Rowe, who remained on the land, and there is no evidence that he paid rent or otherwise acknowledged the title and possession of D. C. Warren. There is no act of disseizin shown. From all that appears, both continued to live on the land as prior to said sale, without any change in the attitude of the parties to the possession. There is no evidence of the exclusive possession of Warren or any acknowledgment on the part of Rowe."

Adhering to this statement of the law, it follows that the charge of his Honor is erroneous, if there is evidence in this record that Rowe remained in possession of the land by permission of the defendant Warren, and acknowledged his title and possession.

A. H. Pippin, a witness for the defendant, testified on the second trial: "I live near Core Point. I knew Isaiah Rowe; did not know all of the Rowe land in controversy. I know the piece of land. I know

about the fact of its being sold for taxes and Mr. Warren buying it. After he got the deed he cut timber off it and cultivated the land. It was part cleared and part woods. There was a small piece cleared up, about five or six acres. I had a conversation with Mr. Rowe about it, went to him one time to rent his timber, and he told me he could not rent it, it belonged to Mr. Warren; and I told him it looked like he was living on the place, and I thought it belonged to him, and he told me Mr. Warren had bought it for taxes, and that it belonged to him; and I spoke to him about his living on the place, and he told me Mr. Warren was letting him stay there his lifetime without objection. He lived there in the house until a right short time before his death."

This evidence was not in the record on the former appeal.

It is true, the witness Pippin does not state the exact time when he had the conversation with Rowe, but his evidence is susceptible of the construction that Rowe acknowledged the title of Warren from the date of the purchase at the tax sale, and the defendant was entitled to have it considered by the jury.

New trial.